Joseph McCartney and Esther McCartney v. Commissioner.
McCartney v. Commissioner
Docket No. 35303.
United States Tax Court
T.C. Memo 1955-300; 1955 Tax Ct. Memo LEXIS 35; 14 T.C.M. (CCH) 1154; T.C.M. (RIA) 55300; November 7, 1955
*35 James S. Delehanty, Esq., for the petitioners. George E. Van Roekel, Esq., for the respondent. TURNER
Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax against the petitioners for the years 1947, 1948 and 1949 in the respective amounts of $500.50, $445 and $506.22. The question for decision is whether petitioners sustained deductible business losses during each of those years. Findings of Fact Some of the facts have been stipulated and are found as stipulated. The petitioners are husband and wife and during the years involved resided in St. Paul, Minnesota. They filed joint income tax returns for the years 1947, 1948 and 1949 with the collector of internal revenue for the district of Minnesota. During the years in question, Joseph McCartney, sometimes referred to as petitioner, was employed as a traffic supervisor for the Minnesota Mining and Manufacturing Company at its warehouse in St. Paul. This was full-time employment and utilized most of his daytime hours. Esther McCartney, during the years in question, was employed by the St. Paul Fire and Marine Insurance Company. In addition to his employment *36 at the Minnesota Mining and Manufacturing Company, petitioner attempted to develop and market a number of different products. In 1947 these products consisted of stove boards and stove mats. The stove boards were to be used on the floor under stoves and heaters to protect the floor from heat; the stove mats were either boards or pieces of material about fifteen or seventeen inches in width and seventeen to nineteen inches in length, which were to be used on the top of stoves. Both the boards and the mats were made of asbestos materials. During 1948 petitioner tried to merchandise an indoor swing, which consisted of a wooden seat with chains attached, and a game called "Crack-A-Ball." In 1949 he tried to develop an ice scraping machine to be used to clean the floors of ice making plants. To handle the processing and manufacturing of these articles, petitioner, during some of the time in question, rented space in a garage and hired one or two people to assist him on a percentage basis. During all of the taxable years, in addition to his other enterprises, he was engaged in selling Christmas cards. Petitioner's income from Minnesota Mining for the years 1947, 1948 and 1949 was $3,767.43, *37 $3,937.43 and $4,204.03, respectively; withholding tax on these salaries was $456.40, $416.80 and $429.91, respectively. Esther McCartney earned salaries from the St. Paul Fire and Marine Insurance Company during 1947, 1948 and 1949 of $1,290, $1,826.89 and $2,062.85, respectively; withholding tax on these salaries was in the respective amounts of $224.20, $287.60 and $307.50. Esther McCartney had a savings account with the Minnesota Federal Savings & Loan Association, the balance of which was $11.20 on December 31, 1946, $1,413.90 on December 31, 1947, $3,176.80 on December 31, 1948, and $5,392.10 on December 31, 1949. During the taxable years Esther McCartney kept record books which she referred to as her "household books." These books contained a record of some of petitioner's business receipts and expenses in addition to personal receipts and expenses. These books were incomplete and inadequate, and did not purport to contain an accurate record of petitioner's business receipts or expenses. On their income tax returns for 1947, 1948 and 1949, petitioners reported their respective incomes from wages, as set forth above, and under Schedule C reported business receipts for those *38 years in the respective amounts of $2,978.74, $3,335.92 and $3,126.70, and claimed business expenses of $5,713.36, $6,305.08 and $6,421.34, respectively. The respondent disallowed that part of the business expenses claimed by petitioners in excess of the business receipts reported for each year. Such disallowed amounts, which were identical with the net business losses claimed by petitioners, were $2,734.62 for 1947, $2,969.16 for 1948, and $3,294.64 for 1949. In addition to his employment at Minnesota Mining and his merchandising activities during each of the years in question, petitioner performed accounting services and prepared Federal income tax returns for certain of his friends and acquaintances. His average income for this work was between $100 and $150 a year for each of the taxable years. One party, R. J. Wittgraf, paid petitioner $150 for some accounting work he performed for him in 1949. All loans obtained by petitioners during each of the years in question were repaid in the years in which the loans were obtained. Opinion The petitioners allege as error the respondent's disallowance of net business losses for each of the years 1947, 1948 and 1949. For those years *39 petitioner reported business receipts from his various business enterprises of $2,978.74, $3,335.92 and $3,126.70, respectively, and business expenses of $5,713.36, $6,305.08 and $6,421.34, respectively. Respondent allowed the expenses to the extent of the business receipts reported, disallowing only the expenses in excess of business receipts, or the net business losses. The evidence offered by petitioners with respect to their business expenses does not substantiate expenses in an amount as great as those allowed by the respondent. Petitioner now seeks to avoid that difficulty by claiming that a portion of his wages for each year, even though properly reported on the return as such, was likewise included in reported business receipts, his position apparently being that if the wages erroneously so included be eliminated from reported business receipts, the net business loss for each year will still be as claimed, even though the business expenses now claimed are less than one-half the amount claimed on the return. The trouble with that claim is that it is no beter supported by proof than was the original claim as to the amount of business expenses incurred. Furthermore, it would *40 seem strange that petitioner, who held himself out as being experienced in the keeping of books and capable of preparing income tax returns, and who, for pay, did prepare returns for others in each of the years herein, would make the simple mistake as claimed for not one but three consecutive years. Such being the state of the record, the determination of the respondent is sustained. Decision will be entered for the respondent.